IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANITA MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 03 C 3634 |
| v. ) | |
| ) | |
| MICHAEL REESE HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Pro se Plaintiff Anita Morris brings this action against Defendant Michael Reese Hospital ("Michael Reese" or "Hospital"). Construing her pro se Complaint liberally, *see Calhoun v. DeTella,* 319 F.3d 936, 943 (7th Cir. 2003), Morris alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Before the Court is Michael Reese's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Michael Reese's motion.

**UNDISPUTED FACTS**

Because Morris is a pro se litigant, Michael Reese served her with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois, Local Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1. Nevertheless, Morris failed to respond to the Hospital's

Local Rule 56.1 Statement of Facts, and thus the Hospital's facts are deemed admitted. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Morris was employed by Michael Reese Hospital from approximately July 1974 until November 16, 2001. (R. 29-1, Defendant's Local Rule 56.1 Statement, ¶¶ 2, 7.) Morris is African-American and over the age of forty. (*Id.* ¶ 2.) During Morris' tenure, Michael Reese promoted her from staff nurse to charge nurse in the Emergency Department. (*Id.* ¶ 9.) As charge nurse, Morris was responsible for the day-to-day operations of the Emergency Department, including scheduling, data collection, as well as, patient care and assignments. (*Id.*) Prior to her termination, Morris had held the title of Assistant Manager for more than five years. (*Id.* ¶ 12.) During this time, she reported to Diane Haynes, an African-American over 40 years of age, who was the Emergency Department manager. (*Id.*)

Dr. Seth Guterman, who had previously provided medical services to Michael Reese, returned to the Hospital in 1999 as part of a new practice, Emergency Care Physician Services ("ECPS"). (*Id.* ¶¶ 19, 20.) ECPS provided medical care for the Hospital's Emergency Department. (*Id.* ¶ 20.) In or about January 1999, Guterman sent a letter to former colleagues in which he sought to recruit them to work for Michael Reese. (*Id.* ¶ 22.) Morris believed that some, but not all of these individuals were Caucasian. (*Id.*) She does not know their ages. (*Id.*)

Guterman did not have a good working relationship with the nursing staff in the Emergency Department. (*Id.* ¶ 24.) Guterman contended that the nursing staff did not follow his orders and reported him when they thought his orders were wrong. (*Id.* ¶ 25.) On June 17, and 22, and on July 7 and 19, 1999, Guterman wrote up incident reports in which he criticized Morris' conduct in the emergency room. (*Id.* ¶ 28.) For instance, Guterman criticized Morris for

2

telling nurses not to order tests after a doctor had told them to do so. (*Id.* ¶ 29.)

In 2000, the Hospital temporarily suspended Guterman for unethical medical practice. (*Id.* ¶ 31.) Shortly before his return, Guterman told Hospital management that he would not return to Michael Reese unless the Hospital fired certain emergency room personnel. (*Id.* ¶ 32.) Guterman made a "hit list" of employees he wanted eliminated from the Emergency Department including Morris, Sonia Winandy, the emergency medical services coordinator (Caucasian), Peggy O'Donnell, (Caucasian), and another African-American nurse. (*Id*. ¶ 33.)

The Hospital terminated Winandy's employment in October 2001, as a result of her poor working relationship with Guterman. (*Id.* ¶ 36.) Michael Reese terminated Morris' employment on November 16, 2001, because the Hospital decided to eliminate the position of Assistant Manager in the Emergency Department. (*Id*. ¶ 15.) Karen Cortese, who is Caucasian, assumed some of Morris' job duties, but her title never changed from staff nurse to Assistant Manager. (*Id*. ¶ 18.)

It is undisputed that Guterman never said anything racial or age-related to Morris or any other Michael Reese employee, nor did he engage in any derogatory conduct directed at any Michael Reese employee on the basis of race or age. (*Id*. ¶ 41.) During her employment at Michael Reese, Morris never complained to Human Resources that she was the subject of unlawful discrimination. (*Id.* ¶ 43.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Even where all of the material facts are undisputed, as in this case, the Court must still determine whether judgment is proper as a matter of law. *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1112 (7th Cir. 1994).

## ANALYSIS

**I.    Race and Age Discrimination – Disparate Treatment Claim**

Morris alleges that she was discharged from her employment at Michael Reese based on her race and age.[1] Specifically, she alleges that Guterman's non-meritorious incident reports concerning her job performance were an attempt to have her disciplined and removed from her position as Assistant Manager of the emergency room. Morris also alleges that Guterman attempted to recruit non-African-American nurses to replace the African-American nurses in the emergency room.

Morris may establish her Title VII and ADEA discrimination claims two separate ways – the direct method or the indirect burden-shifting method under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Jordan v. City of Gary,* 396 F.3d 825, 833 (7th Cir. 2005). Because Morris has not presented any direct evidence of race or age discrimination, the Court turns to the indirect method of proof. To establish a prima facie case, a plaintiff must show that (1) she is a member of a protected class, (2) she reasonably performed to her employer's legitimate expectations, (3) she was subject to an adverse

---

[1] Originally, Morris brought a claim based on national origin discrimination, but later acknowledged that the she thought that race and national origin discrimination were the same. (*See* Def.'s Stmt., Ex. 2, Morris Dep., at 101-02.) Based on this acknowledgment, the Court need not address Morris' national origin claim.

4

employment action, and (4) she was treated differently from similarly situated employees outside of her protected class. *McDonnell Douglas,* 411 U.S. at 802.

If Morris makes this showing, the burden of production shifts to Michael Reese to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If Michael Reese meets this burden, Morris must show that the proffered explanation is pretextual. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Morris, however, does not advance to these later stages of the analysis because she fails to establish a prima facie case of race or age discrimination in the first instance. *See Herron v. Daimler Chrysler,* 388 F.3d 293, 299-300 (7th Cir. 2004); *see also Mannie v. Potter,* 394 F.3d 977, 984 (7th Cir. 2005) (court need not analyze employer's reason for adverse action if employee fails to establish prima facie case).

Because it is dispositive, the Court turns to the fourth element of a prima facie case of age and race discrimination, namely, whether the Hospital treated similarly situated employees who were not African-American or under the age of 40 more favorably than Morris. To establish that another employee is similarly situated, Morris must show that there is someone who is directly comparable to her in all material respects. *See Jordan,* 396 F.3d at 835. In general, when determining whether two employees are directly comparable, courts turn to such relevant factors as whether the employees (1) had the same job description, (2) were subject to the same standards, (3) reported to the same supervisor, and (4) had comparable experience, education, and other qualifications. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003).

There is simply no evidence in the record that Michael Reese treated similarly situated

5

employees who were not African-American and/or under 40 years of age more favorably than they treated Morris. Instead, the record indicates that the emergency room personnel who were on Guterman's "hit list" included both African-American and Caucasian nurses. It is unclear if any of these employees were under the age of 40. In any event, the evidence concerning another African-American nurse is not material to this analysis because that individual is a member of the same protected class as Morris. *See Jordan,* 396 F.3d at 833.

As to the Caucasian nurses, immediately prior to Morris' termination, the Hospital fired Winandy, a Caucasian employee who was the emergency medical services coordinator. The Hospital terminated Winandy's employment because of her poor working relationship with Guterman. Although Winandy was outside of Morris' protected class, she also suffered the adverse employment action of being terminated. Thus, evidence concerning Winandy does not establish that a similarly situated non African-American was treated more favorably that Morris. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 546 (7th Cir. 2002).

Also on Guterman's hit list was Peggy O'Donnell, who is Caucasian. Morris has failed to establish that O'Donnell is directly comparable to her in all material respects. *See Jordan,* 396 F.3d at 835. In fact, the only time Morris mentions O'Donnell in her Complaint is in reference to Guterman's lawsuit against Morris and Winandy that he filed after their terminations.

Although a Caucasian employee assumed some of Morris' job duties, the evidence in the record reflects that the Hospital eliminated the position of Assistant Manager. Again, there is nothing in the record that the woman who assumed some of Morris' job duties was directly comparable to Morris in all material respects, *i.e.,* that she had the same job description,

6

supervisor, and experience as Morris did. *See Ajayi,* 336 F.3d at 532.

Finally, Morris' conclusory assertion that Guterman was trying to get rid of African-American nurses is not supported in the record. *See Ezell v. Potter,* 400 F.3d 1041, 1051 (7th Cir. 2005) ("plan to get rid of older workers and replace them with younger, faster workers is direct evidence of discriminatory intent"). Specifically, there is no evidence in the record that Guterman only sent letters to Caucasian individuals when he was attempting to recruit his former co-workers.

Without more, Morris has not established that there is a genuine issue of material fact whether Michael Reese treated similarly situated emergency department employees more favorably than they treated her. "Identifying similarly situated employees is an essential piece of the prima facie case." *Kriescher v. Fox Hills Golf Resort & Conference Ctr.,* 384 F.3d 912, 916 (7th Cir. 2004). Without such evidence, Morris' age and race disparate treatment claim must fail. *See id.* Therefore, the Court grants Michael Reese Hospital's Motion for Summary Judgment as to this claim.

**II.     Race and Age Discrimination – Hostile Work Environment Claim**

Next, Morris contends that Guterman created a hostile work environment during her employment as Assistant Manager of the emergency room. To establish a hostile work environment, Morris must demonstrate that Guterman harassed her because of her race and age and that the harassment was so severe or pervasive that it created a hostile work environment. *Hrbowski v. Worthington Steel Co.,* 358 F.3d 473, 476 (7th Cir. 2004). To qualify as hostile, a work environment must be objectively and subjectively offensive, that is, it must be a work environment that a reasonable person would find hostile or abusive, and one that the plaintiff in

7

fact perceived to be hostile or abusive. *Ezell,* 400 F.3d at 1047-48. Courts determine whether a work environment is hostile or abusive by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Morris has failed to establish the first step of a hostile work environment claim, namely, that Guterman harassed her because of her race and age. *See Hrbowski,* 358 F.3d at 476. To bring a harassment claim, the conduct must have a discriminatory character or purpose. *See Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345-46 (7th Cir. 1999). Here, there is no evidence in the record that Guterman's conduct was based on race or age discrimination. *See Herron v. DaimlerChrysler,* 388 F.3d 293, 302-03 (7th Cir. 2004). More importantly, it is undisputed that Guterman never said anything racial or age-related to Morris or any other Michael Reese employee. Therefore, the Court grants Michael Reese's Motion for Summary Judgment as to Morris' harassment claim.

## CONCLUSION

For these reasons, the Court grants Michael Reese Hospital's Motion for Summary Judgment.

Date: May 16, 2005

ENTERED

_____
**AMY J. ST. EVE**

8

**United States District Court Judge**